IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Docket No. 2:23cr95 |
| BRANDON LINDSEY, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS

Brandon Lindsey will spend the rest of his life paying for the consequences of his actions. He will be punished by both a long prison sentence and life-altering collateral consequences. In the 18 months since his arrest, Brandon has shown remorse for all of the harm he has caused the victims and their families, as well the pain he has caused his own family. It is clear from his letter that his sincere regret weighs heavily on him, as he processes (with the help of his deep faith) what he has done.



> This is an apology to everyone involved. Exspecially to the families of the ones I hurt. When I think about it that's a pain no one should have to feel.
>
> I send to everyone involved my love and prayers. I want to be there for my family and make a 180° degree turn in life. My regrets bare heavy on my soul to the point it aches sometimes. Everyday I woke up I'm grateful because that lets me know that God isn't finished with a sinner like me yet.

Exh. A (letter from Brandon Lindsey).

1

Brandon's actions will affect him in every area of his life. He served in the United States Air Force since 2019. That career is ruined. He will be required to register as a sex offender probably for the rest of his life. This means his employment, residence, even his ability to use a smart phone or the internet, will be severely restricted and monitored. Brandon will never be looked at the same way again by any friend, family member, future neighbor, or romantic partner. And he faces a sentence from a decade and a half in prison up to, and including, a sentence of more years than he has been alive.

Brandon takes full responsibility for his actions. His desire for accountability began the day he was arrested. He fully and immediately confessed after waiving his *Miranda Rights*. He signed over his identity online and went through his phone with law enforcement *picture by picture* so that he could help the agents identify every photograph of a potential minor. Brandon also quickly pled guilty. The defense believes this extreme level of acceptance should be taken into consideration and is an important reason why a statutory maximum sentence of 30 years, like the government requests, is greater than necessary. 18 U.S.C § 3553(a).

For these reasons, and those outlined in further detail below, a sentence of fifteen years is sufficient, but not greater than necessary. Fifteen years is no slap on the wrist for anyone; it is an incredibly lengthy and life-changing sentence. But, it is an especially long sentence for a young person who has no record and has never been to jail, much less to prison. Most importantly, fifteen years is appropriate when the Court factors in the collateral consequences Brandon faces.

I. **Brandon's history and characteristics support the sentence requested.**

Brandon is now 27 years old. PSR, at 2. He was born in Richmond, Virginia to two loving parents. PSR ¶ 48. His father, Troy Lindsay, works for Dominion Energy. His mom, Angela Lindsay, is a librarian with the Chesapeake City Public Schools. Brandon speaks to his parents regularly and they support him 100 percent. Brandon also has one sister, Jordan, who graduated from Norfolk State in December 2023. PSR ¶ 52.

Brandon describes his childhood in positive terms. PSR ¶ 51. He grew up in a middle-class suburban neighborhood. *Id*. He was a "fairly social kid," and loved to play basketball, football, and participated in track and field in high school. *Id*. Brandon also enjoyed art, video games, movies, and community service projects. *Id.*; *see also* Exh. B (letter from his mother, Angela Lindsey). Faith was, and still is, a big part of Brandon's upbringing; he was active member of Ebenezer Baptist Church in Portsmouth, Virginia. *See* Exh. C (letter from Junius Williams). By all accounts, Brandon was a polite, respectful child, who did not get in trouble in school. *Id*; *see also* Exh. D (letter from his godmother, Yolanda Lucas) and Exh. F (letter from Ryan Mebane). And for anyone who has a chance to speak with Brandon now, he remains thoughtful, polite, and respectful.

Under the surface, however, Brandon was in crisis. In June 2022, Brandon attempted to take his own life. PSR ¶ 58. While inpatient, he was diagnosed with a number of mental health issues. At his arrest, he told agents he thought he might be a "sex addict." PSR ¶ 15. Brandon began some treatment before his arrest, but knows he needs more. To that end, he respectfully asks this Court to recommend that he receive sex offender and mental health treatment while incarcerated. Brandon also struggled

with substance abuse before his arrest. PSR ¶ 60. He similarly asks this Court to recommend he receive substance abuse treatment.

Brandon has a strong support system. But, it is clear from his parents' letters that they are utterly crushed by this experience.

> As he is my only son, the dreams, and aspirations that I had for him as he finished his initial training in the United States Air Force have now been diminished. He will most certainly be receiving a "Dishonorable Discharge" and forever be labeled as a "sex-offender". For a young man with so much potential and opportunity, I cannot imagine what the future will hold for my son. Because he is my son, I must, as I always have, continue to love him unconditionally. Proverbs 3:5-6 *"Trust in the Lord with all thine heart; And lean not unto thin own understanding. In all thy ways acknowledge him, and He shall direct thy paths."* This passage allows me the daily strength the deal with this serious situation.

Exh. E (letter from Troy Lindsay).

> I could have never imagined that Brandon would be incarcerated. My heart is broken and the entire family disappointed, sickened and saddened. The family misses Brandon's calming, patient presence and assistance with chores, errands and technology challenges. Brandon expresses remorse for the pain and humiliation he has caused. Brandon says he accepts responsibility for his actions while trying to keep his spirits up knowing that his future life will have additional challenges.

Exh. A (letter from Angela Lindsay).

Despite their pain, there is no question Brandon "will always have a home and support system within his family." PSR ¶ 52. More importantly, his solid upbringing should also give the Court great hope that Brandon will not reoffend once he receives proper treatment.

### II. The nature and circumstances of the offense warrant a sentence of no more than fifteen years.

The facts of this case are extremely serious. The defense acknowledges this and so does Brandon. But, we ask this Court to take a few facts about Brandon, and the case, into

account. First, Brandon began trading pictures and having relationships with girls he met online when he was in high school. This is not an uncommon practice for teenage boys and young men of his generation. In the beginning, Brandon was just a year or two older than the girls. But Brandon never grew out of this. As he got older, and the age gap grew, his behavior became more problematic, and illegal. Without question, the instant offense involved a very young girl, with whom Brandon did more than simply exchange pictures. He also lied about his age, and tried to cover up his behavior once he got caught.

Paragraph 39 of the PSR reflects 27 "Jane Does." For these individuals, the defense would highlight two things. First, this information comes from Brandon when he voluntarily went through his phone with agent. Second, Brandon only received images from these girls; he did not engage in sexual conduct with them. In most instances, Brandon was either a teenager himself or in his very early 20's.

Another relevant case fact that weighs in favor of a sentence below the statutory maximum is how cooperative Brandon was upon his arrest. Brandon not only waived *Miranda* Rights, but he made admissions far and above what most people would have done in his shoes, and what he was required to do under the law. He walked agents through his phone, picture by picture. He signed over his online identity to law enforcement so that agents could hopefully make further arrests. This Court can and should take this extreme acceptance of responsibility when determining the appropriate sentence.

### III. A sentence of fifteen years would not create an unwarranted disparity.

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A sentence of fifteen years would represent a variance from the advisory range but would be consistent with variances in similar cases and with the emerging judicial recognition of the irrationality of the child pornography sentencing guideline. According to the United States Sentencing Commission, **57.2 percent of production offenders** received below-guidelines sentences.[1] As recent examples:

- In *United States v. Cortista*, No. 4:22cr69, ECF No. 41 (E.D. Va. Feb. 24, 2023) (Young, J.), the 38-year-old defendant was convicted of production of child pornography, where he made two videos performing oral sex on a 4-year-old boy he sometimes cared for. The Court sentenced him to 210-months imprisonment.

- In *United States v. Dylan Seader*, No. 2:22CR69, (E.D. Va. March 10, 2023) (Smith, J.), the defendant received 240 months for production of child pornography. A forensic review of the defendant's devices revealed "several sexually explicit videos of the defendant with an approximate 18-month-old child. SEADER was performing a sexual act on the child." *See* Gov't Pos. on Sent., at ECF No. 31, at 2. Also, on his devices were "two known series of child pornography, as

---

[1] *See* United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses (last visited January 15, 2024.)

identified by the National Center for Missing and Exploited Children." *Id*. The defendant was only caught because he agreed to meet up and have sex with an individual he believed to be a fourteen-year-old child.

- In *Unites States v. Francis*, No. 4:21CR83, (E.D. Va. September 8, 2022) (Allen, J.), the 27-year-old defendant was convicted of receipt of child pornography and had a lengthy history of hands-on offenses, including two juvenile adjudications for aggravated sexual battery. The Court sentenced him to 204 months followed by a life term of supervised release.

- In *United States v. Ethan Roberts*, No. 2:22cr141, ECF No. 32 (E.D. Va. April 23, 2023), the 29-year-old defendant traveled from Arizona to Virginia, engaged in sexual acts with a 14-year-old runaway, and took her back to Arizona. He also took her devices so that no one could find her, and instructed her to sell images of herself online. *See* Gov't Pos. on Sent, at ECF No. 27, at 8. This Court sentenced Mr. Roberts to 360 months, noting many of these facts as particularly aggravating.

All production cases are serious. However, there are several important distinctions here that make Brandon's case deserving of a shorter sentence than these examples. First, the victim's age. Jane Doe 1 was not four years old, like the victim in Mr. Cortista's case, or 18 months old, like the victim in Mr. Seader's case. Second, Brandon has no prior adjudications for sexual offenses, unlike Mr. Francis who had two priors. Third, Mr. Lindsey's age; Mr. Cortista was nearly 40 years old, while Brandon's instant offense conduct began when he was less than 25 years old, and relevant conduct much younger.

Finally, unlike Mr. Roberts, Brandon did not travel halfway across the country to get the victim, take her back with him, make sure no one could find her, and then instruct her to sell images of herself online.

> **IV. More than fifteen years of incarceration is greater than necessary to achieve deterrence, protect the public, and provide adequate treatment needs.**

As a condition of the Court's sentence, Brandon will receive extensive sex offender treatment. This treatment will include an offense-specific evaluation, and a subsequent referral to an offense-specific treatment program that is to be informed by the evaluation. Brandon will be subject to regular polygraph examinations, individualized treatment, and continued supervision by the Court long after his release from prison. Reviews of sex offender treatment programs show that cognitive-behavioral therapy, relapse prevention, and self-regulation have proven successful in treating offenders. *See, e.g.*, Tony Ward, Theresa Gannon, and Pamela Yates, *The Treatment of Offenders: Current Practice and New Development with An Emphasis on Sex Offenders*, 15 Int'l Rev. Victimology 183 (2008); Steve Aos, Marna Miller, and Elizabeth Drake, Washington State Institute for Public Policy, *Evidence-Based Adult Corrections Programs: What Works and What Does Not* 5-6 (2006) (concluding after review of six "rigorous" studies that "cognitive-behavioral therapy for sex offenders on probation significantly reduces recidivism").

Such rehabilitative treatment can and should occur in the community when it is available. Kimberly Wiebrecht, *Evidence-Based Practices and Criminal Defense: Opportunities, Challenges, and Practical Considerations* 8 (2008), *available at* http://nicic.gov/library/files/023356.pdf ("[t]he research…states that treatment

8

interventions are more effective when provided to defendants while they are in the community rather than in an institutional setting."); *see also* Bitna Kim et al., *Sex Offender Recidivism Revisited: Review of Recent Meta-analyses on the Effects of Sex Offender Treatment*, 17 Trauma, Violence, and Abuse 1, 11 (2016) ("The research indicates that treatment in the community is more effective than treatment in institutions. Although there may be obstacles to changing existing exclusionary policies, evidence demonstrates that sex offenders, both adolescent and adult, can be treated successfully in community settings.").

Regarding how Brandon's treatment needs should affect his sentence, it is important to note that the Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation." *See* 18 U.S.C. § 3582 (mandating that the district court, when deciding whether to impose a term of imprisonment and the length of the term imposed, "recognize[ ] that imprisonment is not an appropriate means of promoting correction and rehabilitation"); *see also Mistretta v. United States*, 488 U.S. 361, 367 (1989). In *Tapia v. United States*, 131 S. Ct. 2382 (2011), the Supreme Court unanimously held that a district court is prohibited from imposing or increasing a term of imprisonment in order to promote rehabilitation. A lengthy period of incarceration is not necessary to achieve the goals of rehabilitation and deterrence. In fact, courts have found that incarceration can seriously undermine a defendant's rehabilitation because meaningful opportunities to receive mental health treatment and counseling are more often found in the community, rather than in prison. *See United States v. Crespo-Rios*, 2015 WL 6394256, Crim. No. 08-208, at *3 (D. Puerto Rico Oct. 19, 2015).

An extended prison sentence also cannot be justified on specific deterrence grounds because lengthier prison sentences do not achieve better recidivism rates. This is consistent with the literature. With respect to sex offenses, individual studies and meta-analyses consistently find that "*incarceration has little, if any, impact on recidivism.*" Kevin L. Nunes, *et al.*, *Incarceration and Recidivism among Sexual Offenders*, 31 Law & Human Behavior 305, 314 (2007) (emphasis added). Indeed, not only is the evidence in support of incarceration's deterrent effect "unimpressive," the Nunes study found that, "[c]ounterintuitively, some [sex] offenders may actually experience incarceration as *less* aversive that some alternative sanctions." *Id.* at 306.

An extended prison sentence of more than fifteen years is not necessary to protect the public from any future crimes by Brandon. There is no evidence he is likely to reoffend, especially with proper treatment and the extreme supervision he will receive as a sex offender on federal supervised release.

### V. The sentence requested reflects the seriousness of the offense, provide just punishment, while taking into account the collateral consequences of his conviction.

The sentence requested reflects the seriousness of the offense, while at the same time providing "just punishment." 18 U.S.C. 3553(a). Fifteen years in prison is a substantial sentence, especially during the most formative years of Brandon's adult life. But, it is not just time in prison that make up this sentence. Brandon will have to register as a sex offender, which will be information available to the community, friends, and neighbors. He faces a lengthy term of federal supervision, potentially for the rest of his life, where he will be supervised, monitored, and his rights severely restricted. As several

courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of *Gall*, overruling its prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender).

## CONCLUSION

Brandon is remorseful for his actions. He knows they are serious, and they will never be repeated. While he cannot change the past, Brandon is motivated to find the root cause of what led him to these actions. Given all of these factors, a sentence of fifteen years is sufficient to satisfy the sentencing factors considered by the Court.

Respectfully submitted,

BRANDON LINDSEY

By _____/s/_____
Amanda C. Conner
Assistant Federal Public Defender
Virginia State Bar No. 88317
Attorney for Brandon Lindsey
Office of the Federal Public Defender
500 E. Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: 757-457-0890
Facsimile: 757-457-0880
amanda_conner@fd.org